UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

DOMINIC MAXWELL,            )
                            )
        Petitioner,          )
                            )
    v.                      )         No. 4:08 CV 1896 DDN
                            )
STEVE LARKINS,              )
                            )
        Respondent.          )

**MEMORANDUM**

This action is before the court upon the petition of Missouri state prisoner Dominic Maxwell for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The parties have consented to the exercise of plenary authority by the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). (Doc. 6.) For the reasons set forth below, the petition for a writ of habeas corpus is denied.

**I.  BACKGROUND**

On July 12, 2004, petitioner pleaded guilty in the Circuit Court of Saint Louis County to one count of sexual abuse, a Class C Felony. (Doc. 8, Ex. B at 2.) Thereafter, petitioner was sentenced by the circuit court to one 3-year term of imprisonment, to run concurrently with defendant's two existing 7-year terms pursuant to his probation revocation by the court. (Id. at 16.)

Petitioner filed a pro se motion for post-conviction relief on the following grounds: ineffective assistance of counsel for failing to inform petitioner of the guilty plea consequences, and the lack of a factual basis for his guilty plea. (Id. at 35-36.) The circuit court appointed counsel for petitioner. (Id. at 41.) His counsel filed an amended motion alleging the following grounds: failure of the circuit court to inform petitioner of potential indefinite "civil" commitment under the Sexually Violent Predator Act (SVP Act); the court's failure to establish a factual basis for the charged sexual abuse; the circuit court's failure to inform him that as a consequence of pleading guilty he would have to register as a sex offender for the remainder of his

life; and lastly, ineffective assistance of the counsel for failing to inform him of the consequences of pleading guilty, including commitment under the SVP Act, mandatory registration as a sex offender, mandatory completion of the Missouri Sex Offenders Program (MOSOP), and the inability to see his family. (Id. at 140.)

The court denied the motion for post-conviction relief for several reasons. (Id. at 33, 141.) First, the court denied relief because petitioner made his Alford[1] plea knowingly, voluntarily, and intelligently. (Id.) Second, petitioner's plea testimony contradicted his subsequent allegation of a failure to establish a factual basis for sexual abuse; he testified that he understood and agreed with his guilty plea, and that "something did happen" with the victim. (Id.) Petitioner also testified that he believed the state possessed substantial evidence against him and which would likely convict him. (Id.) The court also noted that petitioner had earlier expressed satisfaction with trial counsel's representation, his other claims were collateral in nature only, and counsel had no obligation to inform him of collateral consequences of his plea. (Id.)

On December 15, 2006, petitioner filed an appeal in the Missouri Court of Appeals. (Id. at 33.) The appellate court affirmed the decision of the circuit court, holding that the findings and conclusions of the motion court were based on findings of fact that were not clearly erroneous. (Id., Ex. F at 1.)

On December 12, 2008, Petitioner filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Doc. 1 at 1).

## II. PETITIONER'S GROUNDS FOR HABEAS RELIEF

Petitioner claims four grounds for relief in this habeas action:

(1) Petitioner received insufficient information from the circuit court regarding the possible civil commitment under the SVP Act.

(2) Petitioner's plea was improperly accepted by the circuit court because of a failure by the court to establish a factual basis for sexual abuse in the Alford plea.

---

[1]Named for North Carolina v. Alford, 400 U.S. 25 (1970), discussed below.

(3) Petitioner received insufficient information from the circuit court regarding the consequences of a guilty plea, that is, the possible requirement to register as a sex offender.

(4) Petitioner received ineffective assistance of counsel when counsel failed to adequately inform him of the consequences of a guilty plea in four respects: (a) that he could be committed under the SVP Act, (b) that he would have to register as a convicted sex offender for the rest of his life, (c) that he would have to complete the Missouri Sexual Offender Program (MOSOP) before release from prison, and (d) he would not be able to see his family.

Respondent contends that petitioner's claims are barred because petitioner was not "in custody" at the time he filed this petition for habeas relief, as required pursuant to 28 U.S.C. § 2254(a). (Doc. 7 at 1.) Moreover, respondent argues that Grounds 1 through 4 fail on their merits. (Id. at 2-5.)

### III. IN-CUSTODY STANDING

As respondent notes, the petitioner's claim is barred because in order to qualify for habeas relief, a petitioner must be "in custody." 28 U.S.C. § 2254(a). The federal habeas statute gives United States District Courts the jurisdiction to entertain petitions for habeas relief only from those persons who are "in custody in violation of the United States Constitution or laws. . . ." Maleng v. Cook, 490 U.S. 488, 490 (1989)(per curiam). An incarcerated petitioner who challenges the current conviction always meets the "in custody" requirement because the incarceration itself is a "concrete injury, caused by the conviction and redressable by invalidation of the conviction." Spencer v. Kemna, 523 U.S. 1, 1-2 (1998). However, to establish the "in custody" requirement, a petitioner does not need to be physically confined. Maleng, 490 U.S. 492. A federal habeas petitioner is also entitled to relief if he files his petition from prison, but is released while the motion is still pending; or if he is on probation at the time of filing; or if he is otherwise limited by some continuing injury. Id., Spencer, 523 U.S. at 1. However, a petitioner whose term has expired, and who cannot show a direct continuing injury or consequence is not "in custody" for purposes of habeas relief. Id. Collateral consequences are not enough because "negligible effects on a petitioner's physical liberty of movement are

insufficient to satisfy the custody requirement." <u>Virsnieks v. Smith</u>, 521 F.3d 707, 718 (7th Cir. 2008), <u>cert. denied</u>, 129 S. Ct. 161 (2008).

At the time Maxwell's federal habeas petition was filed, on December 12, 2008, his sentence for sexual abuse had already expired. (Doc. 8, Ex. H at 4.) Therefore, petitioner was not "in custody" in relation to that sentence which is challenged here. <u>Maleng</u>, 490 U.S. at 491-92. Petitioner was incarcerated at the time of the petition for two other convictions, which he had been serving concurrently with his sentence for sexual abuse. (Doc. 8, Ex. B at 16.) However, a petitioner whose sentence has expired is no longer "in custody" for that conviction, even if it is used to enhance a current sentence. <u>Jackson v. Iowa</u>, 158 F. App'x 755, 756 (8th Cir. 2005)(unpublished per curiam)(holding that the district court's finding that petitioner was discharged from supervised release before he filed his habeas petition was not clearly erroneous); <u>Charlton v. Morris</u>, 53 F.3d 929, 929 (8th Cir. 1995) (per curiam); <u>Weaver v. Pung</u>, 925 F.2d 1097, 1099 (8th Cir. 1991); <u>Leslie v. Randle</u>, 296 F.3d 518, 520 (6th Cir. 2002).

Furthermore, petitioner's potential civil commitment under the SVP Act and mandatory registration as a sex offender do not establish the "in custody" requirement. <u>Leslie</u>, 296 F.3d at 521; <u>Hansen v. Marr</u>, 594 F. Supp. 2d 1097, 1100 (D. Neb. 2009). While physical confinement is not necessary to satisfy the "in custody" requirement for jurisdiction to consider a habeas petition, "courts have rejected uniformly the argument that a challenge to a sentence of registration under a sexual offender statute is cognizable in habeas." <u>Hansen</u>, 594 F. Supp. 2d at 1100; <u>Virsnieks</u>, 521 F.3d at 718 (holding that Wisconsin's sex offender registration requirements are remedial rather than punitive and therefore do not satisfy the "in custody" requirement for habeas claims); <u>see also</u> <u>McNab v. Kok</u>, 170 F.3d 1246, 1247 (9th Cir. 1999) (per curiam). Civil commitment as a sexually violent predator and related consequences to classification are collateral consequences rather than severe restraints on liberty. <u>Hansen</u>, 594 F. Supp. 2d at 1100; <u>Davis v. Nassau County</u>, 524 F. Supp. 2d 182, 188 (E.D.N.Y. 2007). Therefore, even though the possibility existed that petitioner could be civilly committed under the Sexually Violent Predator Act, and forced to comply with other

requirements, he was not "in custody" for purposes of qualifying for habeas relief. Hansen, 594 F. Supp. 2d at 1100.

Because he has failed to show that he is in custody pursuant to § 2254, petitioner's claim is barred. Moreover, all petitioner's grounds fail on their merits, as is shown below.

### IV. STANDARD OF MERITS REVIEW

The Antiterrorism and Effective Death Penalty Act (AEDPA) requires that habeas relief may not be granted by a federal court on a claim that has been decided on the merits in state court unless that adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).

A state court's decision is "contrary to clearly established Federal law" if it "arrives at a conclusion opposite to that reached by [the] Court on a question of law or . . . decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 413 (2000)(plurality opinion). A state court's decision involves an "unreasonable application" of clearly established federal law if "the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id.

The standard for habeas review articulated by AEDPA applies only to those claims which were adjudicated on the merits by a state court. See Robinson v. Crist, 278 F.3d 862, 865 (8th Cir. 2002) (stating that the AEDPA standard governs petitions for habeas corpus "which were adjudicated on the merits in state court proceedings."). Where a petitioner's claims were not adjudicated on the merits by a state court, the pre-AEDPA standard for habeas review governs. Id. ("Because this claim apparently was not adjudicated by the Minnesota court, we likely should apply the pre-AEDPA standard of review."). Under the pre-AEDPA

standard, the habeas petitioner must show a "reasonable probability that the error complained of affected the outcome of the trial or that the verdict likely would have been different absent the now-challenged [defect]." Id. at 866 (internal quotations omitted).

In this case petitioner's federal habeas Grounds 1, 2, 3, and 4 were alleged in his amended motion for post-conviction for relief. (Doc. 8, Ex. B at 46-67.) Following a hearing, the circuit denied all grounds for relief. (Id. at 129-34.)

Following the denial of post-conviction relief by the circuit court, petitioner raised federal habeas Grounds 1, 2, 3, and 4(a)-(c) in the Missouri Court of Appeals. Ground 4(d) was not raised on appeal. (Id., Ex. C at 18-24.) The Missouri Court of Appeals affirmed the denial of post-conviction relief.

## V. DISCUSSION

**Ground 1**

In Ground 1, petitioner contends that the circuit court failed to inform him that "civil commitment" under the Sexually Violent Predator Act at the conclusion of his prison sentence was a possible consequence of his guilty plea. (Id.) Petitioner asserts that, had he known of this he would have proceeded to a jury trial instead of pleading guilty.

The right against self-incrimination, the right to persist with a plea of not guilty, the right to a jury trial, and the right to due process are rooted in the Fifth, Sixth, and Fourteenth Amendments of the United States Constitution. Maness v. Meyers, 419 U.S. 449, 462-63 (1975); Brookhart v. Janis, 384 U.S. 1, 7-8 (1966); Johnson v. Zerbst, 304 U.S. 458, 464-465 (1938). By pleading guilty, defendant waives those rights. Harris v. State, 204 S.W.3d 371, 374 (Mo. Ct. App. 2006). However, to make his guilty plea acceptable to the court, the trial court and counsel for the defendant have a duty to inform him of the direct consequences of his guilty plea, namely, those which definitely, immediately, and largely automatically follow the entry of a plea of guilty. Id. "Neither the trial court nor trial counsel are under an affirmative obligation to inform a defendant of all possible collateral

consequences of a guilty plea." Id. (quoting Price v. State, 974 S.W.2d 596, 599 (Mo. Ct. App. 1998)(per curiam)).

Courts have held that the risk of commitment under a SVP Act is a collateral consequence of a plea, not a direct consequence. George v. Black, 732 F.2d 108, 111 (8th Cir. 1984); Harris, 204 S.W.3d at 374. The distinction between collateral and direct consequences of a guilty plea, lies in whether the result definitely, immediately, and largely automatically affects the range of defendant's punishment. George, 732 F.2d at 110 (citing Cuthrell v. Dir., Patuxent Inst., 475 F.2d 1364, 1366 (4th Cir. 1973)).

Civil commitment under the Missouri SVP Act is a possible consequence of a guilty plea to sexual abuse, but it is not mandatory and not a certainty that a petitioner will be committed. Morales v. State, 104 S.W.3d 432, 435 (Mo. Ct. App. 2003). Nothing in the Sexually Violent Predator laws nor in other statutory laws state that movant will automatically and definitely be determined to be a sexually violent predator. Id. In order to classify petitioner as such, he must suffer from a mental abnormality which makes him more likely than not to participate in acts of sexual violence if not confined. Id. However, petitioner would not automatically and definitely meet those qualifications and be committed at the end of his sentence just because his guilty plea of sexual abuse is a predicate offense for possible commitment. Id.

These laws are civil commitment laws, not criminal statutes, and accordingly, petitioner would go through a separate civil process before any consequences would attach. Id. A multi-disciplinary team would evaluate whether petitioner met the statutory definition of a "sexually violent predator." Id.; Mo. Rev. Stat § 632.483. That determination is then subject to evaluation by the Attorney General and another review committee. Morales, 104 S.W.3d at 436. A judge would then determine if there is probable cause to believe that the person is a sexually violent predator, and if such determination is made, then that person would be taken into custody. Id. The lengthy, multi-level process and the non-mandatory nature of the commitment indicate that the consequences of classification under the SVP Act do not definitely, immediately, and

largely follow the entry of the guilty plea from defendant. Id. As a result, the court is not required to inform the defendant of that risk. Brady v. United States, 397 U.S. 742, 755 (1970); George, 732 F.2d at 110. Rule 24.02 of the Missouri Rules of Criminal Procedure requires that the court only inform the defendant of the nature of the charge to which the plea is offered, the mandatory minimum penalty, and the maximum possible penalty, before accepting a plea of guilty. Mo. R. Crim. P. 24.02 (b).

Petitioner's assertion that fundamental fairness under the Due Process Clause required the trial court to inform him of even collateral consequences is without merit. Petitioner cites a New Jersey state case, State v. Bellamy, which is not controlling or persuasive. In Bellamy, the New Jersey Supreme Court held that defendant deserved to know of civil commitment under "fundamental fairness" of the Due Process Clause, while only a collateral consequence of a guilty plea. State v. Bellamy, 835 A.2d 1231, 1238 (N.J. 2003).

However, under controlling precedents, the trial court need only inform a defendant of the direct consequences of a guilty plea, not collateral ones. Brady, 397 U.S. at 755; George, 732 F.2d at 110; United States v. Lambros, 544 F.2d 962, 966 (8th Cir. 1976). Civil commitment under the SVP Act did not definitely, immediately, and largely automatically follow the petitioner's guilty plea; in fact, there is no certainty that such commitment will ever occur. See also, Carter v. Larkins, No. 4:07 CV 1581 CDP, 2009 WL 3068094, at **8-11 (E.D. Mo. Sept. 25, 2009); Klaus v. Luebbers, No. 4:06 CV 177 AGF, 2009 WL 367697 at **3-5 (E.D. Mo. Feb. 11, 2009).

The Missouri Court of Appeals's affirmance of the denial of relief on this ground was a reasonable application of federal law. Ground 1 is without merit.

**Ground 2**

In Ground 2, petitioner contends that the circuit court failed to establish a factual basis for sexual abuse in petitioner's Alford plea;

he claims the record is unclear as to what he admitted guilt to and what he denied. (Doc. 1 at 15.)

Through a guilty plea, a defendant gives up his right to trial unless the plea was unknowing, involuntary, or unintelligent. Brady, 397 U.S. at 755; George, 732 F.2d at 110. Therefore, we must determine whether petitioner had sufficient awareness of the relevant circumstances and related consequences when he made his Alford plea. George, 732 F.2d at 110. Because the court was required to inform petitioner of only the direct consequences of his plea, the failure to inform him of collateral consequences does not render his plea constitutionally unknowing or unintelligent. Id. In addition, petitioner himself stated in court that he made the plea voluntarily, and was not coerced in any way. (Doc. 8, Ex. B at 23.)

Petitioner in this case pleaded guilty pursuant to North Carolina v. Alford, which establishes that, although the defendant maintains his innocence, he acknowledges the strong evidence of actual guilt the state has against him, and the likelihood of conviction should he proceed to trial. North Carolina v. Alford, 400 U.S. at 31-33. It is constitutionally correct for a court to accept a defendant's Alford plea despite defendant's claim of innocence because the defendant himself acknowledges the state has a strong factual basis for the guilty plea. Id. Knowing this, the defendant voluntarily makes a decision to plead guilty and avoid potentially harsher punishment. Id. As a result, the court has the right to treat the defendant as guilty. Id. at 35.

Furthermore, petitioner's statements in court directly contradict that the court failed to establish a factual basis. In order for a court to accept a guilty plea, Rule 24.02(e) requires that a court must not do so unless it finds a factual basis for doing so. Mo. R. Crim. P. 24.02(b). However, to establish that basis, a defendant need not admit or recite facts constituting the offense. Alford, 400 U.S. at 38; Jones v. State, 758 S.W.2d 153, 154 (Mo. Ct. App. 1988) (citing Smith v. State, 663 S.W.2d 248, 249 (Mo. Ct. App. 1983)). If the defendant understands the facts recited by the judge or prosecutor, the court has established a factual basis. Id. "A prosecutor's statement that he is prepared to prove facts which would constitute the crime to which defendant is

pleading guilty is sufficient." State v. Morton, 971 S.W.2d 335, 340 (Mo. Ct. App. 1998) (citing Baker v. State, 875 S.W.2d 618, 620 (Mo. Ct. App. 1994)).

Petitioner's testimony in court included the admission that "something did happen" with the victim and that he was present on the night in question. (Doc. 8, Ex. B at 13-14.) Also, he believed that the state had substantial evidence against him, and would likely convict him if the matter went to trial. (Id. at 14.) Petitioner also acknowledged that he subjected the victim to sexual contact through forcible compulsion. (Id.) Lastly, the prosecutor read the charged facts aloud, and defendant subsequently pleaded guilty, knowing those were the charges against him. (Id. at 13-14.) Those facts included: that defendant went to the victim's house with another friend to hang out; that defendant then took the victim into a room and began to kiss her; victim tried to push him off, but he grabbed her and pulled her to the bed; defendant then got on top of the victim, pulled up her shirt, exposed her breasts, and kissed them; and the victim indicated a lack of consent to this activity. (Id.)

Petitioner acknowledged he understood the allegations against him, and that he wanted to complete his plea of guilty regardless. (Id. at 15.) Because the court established a factual basis before accepting defendant's guilty plea, petitioner's subsequent allegations that it was unclear to what he was admitting and denying guilt for are unsupported by the record.

The decision of the Missouri courts was reasonable and, as a result, Ground 2 is without merit.

**Ground 3**

In Ground 3, petitioner asserts that the circuit court erred in failing to advise him that he would have to register as a sex offender as a consequence of his guilty plea.

The circuit court was only required to inform petitioner of the direct consequences of his guilty plea. Brady, 397 U.S. at 755; George, 732 F.2d at 110; Lambros, 544 F.2d at 966; Carter v. State, 215 S.W.3d 206, 209 (Mo. Ct. App. 2006); Morales, 104 S.W.3d at 435. Rule 24.02

outlines those consequences, which include the nature of the charge to which the plea is offered, the mandatory minimum penalty, and the maximum possible penalty, before accepting a plea of guilty. Mo. R. Crim. P. 24.02(b). As a result, the court was under no obligation to inform petitioner of collateral consequences. <u>George</u>, 732 F.2d at 110. Not only have courts held that civil commitment pursuant to sexually violent predator statutes in general is a collateral consequence, but also that mandatory sex offender registration amounts only to a collateral consequence. <u>Leslie</u>, 296 F.3d at 522-23; <u>Davis</u>, 524 F. Supp. 2d at 188. It does not limit a petitioner's movement through travel or otherwise, and does not restrain his liberty in any significant way. <u>Davis</u>, 524 F. Supp. 2d. at 189. Because it is collateral, the circuit court did not violate petitioner's constitutional rights by not informing him of this possible consequence.

As stated above, petitioner's assertion that fundamental fairness under the Due Process Clause requires the trial court to inform Maxwell of even collateral consequences is without merit. The <u>Bellamy</u> decision, which held that "fundamental fairness" entitled defendants to be informed of both direct and collateral consequences, is not controlling or persuasive. <u>Bellamy</u>, 835 A.2d at 1238. The trial court need only inform a defendant of the direct consequences of a guilty plea, which do not include consequences of commitment under the SVP Act, such as registration as a sex offender. <u>George</u>, 732 F.2d at 110; <u>Carter</u>, 215 S.W.3d at 210; <u>Carter</u>, 2009 WL 3068094, at **8-11.

The Missouri courts reasonably rejected this ground on its merits. Ground 3 is without merit.

**Ground 4**

In Ground 4, petitioner asserts that he received ineffective assistance of counsel in four respects: counsel failed to advise him of (a) possible commitment under the SVP Act, (b) mandatory registration as a sex offender for the remainder of his life, (c) mandatory completion of the MOSOP Program, and (d) inability to see his family as a result of pleading guilty to sexual abuse.

The right to constitutionally effective assistance of counsel is rooted in the Sixth and Fourteenth Amendments. Strickland v. Washington, 466 U.S. 668, 690 (1984). The court in Strickland announced a two-part test to guide courts in determining whether a petitioner can raise a successful claim of ineffective assistance of counsel. Id. at 688. This two-part test likewise guides determinations of ineffective assistance of counsel in the context of the plea process. See Hill v. Lockhart, 474 U.S. 52, 58 (1985) ("We hold, therefore, that the two-part Strickland v. Washington test applies to challenges to guilty pleas based on ineffective assistance of counsel."). First, petitioner must show that counsel's performance was deficient, meaning that it fell below an objective standard of reasonableness. Id. Second, to satisfy the prejudice requirement, petitioner must also demonstrate that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Id. at 59 (stating that the prejudice inquiry in guilty plea cases "will closely resemble the inquiry engaged in by courts reviewing ineffective-assistance challenges to convictions obtained through a trial.").

Under Strickland, the petitioner must overcome a strong presumption that counsel rendered appropriate assistance. Marcrum v. Luebbers, 509 F.3d 489, 502 (8th Cir. 2007), cert. denied, 129 S. Ct. 754 (2008). To rebut this presumption of constitutionally effective assistance, petitioner must show that counsel's actions were the product of inattention or neglect, and not reasoned judgment. Id. Moreover, "[w]hile a guilty plea taken in open court is not invulnerable to collateral attack in a post conviction proceeding, the defendant's representations during the plea-taking carry a strong presumption of verity and pose a formidable barrier in any subsequent collateral proceedings." Nguyen v. United States, 114 F.3d 699, 703 (8th Cir. 1997) (internal quotations omitted).

In this case, petitioner has not satisfied either prong of Strickland. Beyond the conclusory allegations set forth in his petition for habeas relief, petitioner has made no showing that counsel rendered deficient assistance. Petitioner's statements before the circuit court at his plea hearing indicate his general agreement that his counsel

rendered legal service that was acceptable to him. (Doc. 8, Ex. B at 24.)

> Q: The Court is now required to examine you with regard to the assistance of counsel received by you in these three cases. Ms. Harry represented you throughout these cases; is that correct?
>
> A: Yes, sir.
>
> Q: The questions I'm going to ask you relate to her representation. Did she do everything you asked her to do?
>
> A: Yes.
>
> Q: Do you know of anything she could have done that she didn't do?
>
> A: No, sir.
>
> . . .
>
> Q: Do you have any complaints or criticisms with regard to her representation?
>
> A: No, sir.

Id.

However, in his federal habeas petition petitioner specifically alleges that counsel erred by not informing him of potential consequences of pleading guilty to sexual abuse, including commitment under the SVP Act, registration as a sex offender, completion of MOSOP Program, and inability to see his family.[2] All of these potential consequences are civil in nature, and result from pleading guilty to sexual abuse, a predicate offense for subjecting a defendant to the SVP Act. As stated above, civil commitment under SVP and related obligations constitute collateral consequences. George, 732 F.2d at 110; Carter, 215 S.W.3d at

---

[2]The post-conviction hearing record indicates some evidence that petitioner's defense counsel advised him that following his guilty plea he might be required to register as a sex offender (Doc. 8, Ex. A at 7-8) and that he would have to satisfactorily complete the MOSOP program (id. at 8, 13). However, the circuit court made no finding that petitioner was so advised, but instead ruled that his allegations in these respects were without merit as a matter of law because the consequences petitioner complains of were not direct consequences of his plea. (Id. at 142-43.)

209; see also People v. Gravino, 14 N.Y.3d 546, 2010 WL 1849361, at *8 (N.Y. May 11, 2010) (deciding that registration as a sex offender was not a direct consequence of a guilty plea). However, counsel is not constitutionally required to inform a defendant of collateral consequences of a guilty plea. Klaus v. Luebbers, 2009 WL 367697, at **5-8; Keene v. Ault, No. C03-1041-MWB, 2005 WL 1177905, at **15-18 (N.D. Iowa May 16, 2005).

The Supreme Court recently held that a lawyer's representation could be constitutionally deficient when that attorney failed to advise his client that pleading guilty made him subject to automatic deportation. Padilla v. Kentucky, 130 S. Ct. 1473, 1478 (2010). Although removal proceedings are civil in nature, the Supreme Court noted that deportation is intimately related to the criminal process, has long been recognized as a "penalty," and can be the most important consequence of a guilty plea. Id. at 1480, 1481. The Court also observed that the weight of prevailing professional norms supported the view that counsel must advise a client about the risk of deportation. Id. at 1482.

In this case, registration as a sex offender is not punitive. R.W. v. Sanders, 168 S.W.3d 65, 69 (Mo. 2005). Instead, registration is the government's method for making relevant and necessary information available to law enforcement. Id. The registration statutes "serve the regulatory purpose of assisting authorities with investigation of sex crimes." Id. at 70. Unlike deportation, the act of registration does not restrict the physical movement of the defendant. Id. "[T]he registration requirements do not impose substantial physical or legal impediments upon a registrant's ability to conduct his or her daily affairs." Id. As a result, the registration requirements are viewed as civil and regulatory in nature. Id.

The MOSOP program also does not resemble deportation. A defendant convicted of a sex offense must complete the MOSOP Program while in prison to be considered for parole. In re Care and Treatment of Norton, 123 S.W.3d 170, 179 (Mo. 2003) (Wolff, J., concurring). As part of the program, the offender must admit his guilt and show remorse. Id.

Commitment as a SVP also does not implicate the Supreme Court's concerns in Padilla. In Padilla, the Supreme Court noted that "recent

changes in our immigration law have made removal nearly an <u>automatic result</u> for a broad class of noncitizen offenders." <u>Padilla</u>, 130 S. Ct. at 1481 (emphasis added). Given the threat of mandatory deportation, the Court was particularly concerned with counsel's advice at the guilty plea stage. <u>See</u> <u>id.</u> at 1478. As noted above, commitment as a SVP is not so automatic. <u>See</u> <u>Morales</u>, 104 S.W.3d at 437. Instead, the SVP procedure is a multi-level process, culminating in a jury or bench trial, in which the fact-finder must determine, beyond a reasonable doubt, that the offender is a sexually violent predator. <u>Id.</u>

Finally, there is no clear direction from professional organizations on the subject. In its guidelines, the National Legal Aid and Defender Association (NLADA) specifically advises that counsel should insure the client is fully aware of the maximum fine and prison term that may be ordered, any possible sentence enhancements or parole consequences, as well as "other consequences of conviction such as deportation, and civil disabilities." NLADA, Performance Guidelines for Criminal Representation § 6.2 (1995). There is no specific mention of sex offender registries or SVP procedures. <u>See</u> <u>id.</u>

Given the differences between the deportation context and the sexual offender context, the <u>Padilla</u> decision does not indicate that the performance of Maxwell's attorney was constitutionally deficient.

As stated, specifications (a), (b), and (c) of Ground 4 were ruled against petitioner by the Missouri circuit and appellate courts. These decisions were reasonable applications of federal law. They are without merit. Although the circuit court's denial of Ground 4(d) was not appealed to the Missouri Court of Appeals, it, too, is without merit because the denial of family visitation which petitioner complains about is not a direct consequence of his guilty plea. This ground is without merit.

## VI. CONCLUSION

For the reasons stated above, the petition of Dominic Maxwell for a writ of habeas corpus is denied. An appropriate order is issued herewith.

                                                <u>David D. Noce</u>
                                        **UNITED STATES MAGISTRATE JUDGE**

Signed on July 1, 2010.